


# UNITED STATES DISTRICT COURT
## for the
### Eastern District of California
### Personal massive Injury Division

| | |
|---|---|
| Jean Marc Van den Heuvel : #132049 : E.D.C.P. | Case No. **2:22 - CV 1269 KJM CKD** |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | Jury Trial: *(check one)*  ☐ Yes  ☐ No |
| -v- | |
| California State License Board :Sharon Hoefling | **FILED** |
| *Defendant(s)* | JUL 18 2022 |
| (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | CLERK, U.S. DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA BY _____ DEPUTY CLERK |

## COMPLAINT FOR A CIVIL CASE

**I.    The Parties to This Complaint**

    **A.    The Plaintiff(s)**

        Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Jean Marc Van den Heuvel |
| Street Address | General Force Placed Judicial : 3045 Sacramento Street |
| City and County | Placerville : ElDorado County |
| State and Zip Code | California 95667 |
| Telephone Number | 916-595-8971 |
| E-mail Address | jeanmarc57@juno.com |

    **B.    The Defendant(s)**

        Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1
- Name: California State License Board
- Job or Title (if known): governing Enforcements of licensures by issued
- Street Address: 9821 BUSINESS PARK DRIVE
- City and County: Sacramento California 95827
- State and Zip Code: California
- Telephone Number: 916-255-3900
- E-mail Address (if known): N.A.

Defendant No. 2
- Name: Sharon Hoefling
- Job or Title (if known): Dentist
- Street Address: 4205 San Felipe Road
- City and County: San Jose
- State and Zip Code: CA. 95135
- Telephone Number: 408-270-4333
- E-mail Address (if known): N.A.

Defendant No. 3
- Name:
- Job or Title (if known):
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Defendant No. 4
- Name:
- Job or Title (if known):
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

(916) 255-3900 § 635.110 - Licensing and qualification of contractors. the false revocations of licesures # 771-545 by approvals,followed by intent causes of injury on November 12,2007 Ruth Astalle , Michael Franklin at a desired different county structures Alameda County from the Santa Clara case Closures by the prompt returns of court ordered summary judgements to return only the monetary values of the Entry way cabinetry,luandry room cabinetry,special Mahagany Desk at the Dentiost home office. $18,000.00 returned via certified check to Dr.Sharon Hoefling prior to the intentfuil; further persuits of injuries forced upon artisan Jean Marc Van den Heuvel that would cause massive future injuriues include the procecutions by Kassie cardullo that would end up at prison facility at South Lake Tahoe by intent judicial injuries from a false gun allegations that wpouild occure at Georgetown California.The jail sentence would add to the losses of remaing tools aquired by Plaintiff since 1969 for the crafts of custom woodwork/homebuilding trade skills.

(

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

   a. If the plaintiff is an individual
      The plaintiff, *(name)* _____ , is a citizen of the State of *(name)* _____ .

   b. If the plaintiff is a corporation
      The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.  The Defendant(s)

    a.  If the defendant is an individual

        The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

    b.  If the defendant is a corporation

        The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.
        Or is incorporated under the laws of *(foreign nation)* _____, and has its principal place of business in *(name)* _____.

    *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.  The Amount in Controversy

    The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

    _____

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Although the explicit right to pursue happiness is absent from the Constitution of the United States, it was not forgotten at the state level. Less than a month prior to the signing of the *Declaration of Independence*, the Virginia Convention of Delegates adopted the *Virginia Declaration of Rights*, which included a guarantee of the inherent right to "the enjoyment of life and liberty... and pursuing and obtaining happiness and safety."[2] These protections remain in place today in the state constitutionThe massive injuries from being displaced by the efforts of intents to harm another human being is a shameful conclusive foss for this Plauintiff.The adverse challenges include the diableing stroke on August 10,2014 shows proofs of injuries .The remifications of rekless judicial massacres that occure at a unbalanced predjudicial criminal courts ,with the possibilities of any procecutor to become creatiovely injurous occurred just in the cases brought to criminal accusations by District Attorney Kassie Cardullo that intently massacred this Plaintiffs being along with added defendant "Brian Getny" at a licensure accusations this Plaintiff was in obligations to pay rents,on a woodwork shop at Greenwood California,owned by anothr dentisyt Riodger Musso.

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

$850,000,000.00    Eight Hundred Fifty Million Dollars (* U.S.)  The massive losses of due oppertunities and conclusive street law degree and educated court proceedures in a broken brain conditions with P.T.S.D. and services at eldorado County Prison facility at far away,distant South Lake Tahoe in solitaire confinements for #6 months loosing bekloved critters and pets.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  05/19/2022

Signature of Plaintiff

Printed Name of Plaintiff    jEan Marc Van den Heuvel

### B. For Attorneys

| | | |
|---|---|---|
| Date of signing: | 04/22/2022 | |
| Signature of Attorney | *[signature]* | JESUS CHRIST |
| Printed Name of Attorney | Jean Marc Van den Heuvel | Pro-Se-Littigant : Jesius Christ |
| Bar Number | 132049 | |
| Name of Law Firm | Prisoner of life conditions by persecutions | |
| Street Address | 3045 Sacramento street : General Homeless / Transient P.O. | |
| State and Zip Code | California 95667 | |
| Telephone Number | 9816-595-8971 | |
| E-mail Address | jeanmarc57@juno.com | |

April 1, 2005

California State Contractor's License Board

To whom it may concern:

Please find the following complaints in regards to my business affairs with Jean Marc Van den Heuvel, President of J.M. Van den Heuvel Co., California state contractor's license #771545. My husband, Jon Hoefling, and I hired Mr. Van den Heuvel to design, build, finish and install new kitchen and laundry cabinets, a desk with an overhead cabinet, a nook cabinet server, a window seat with bookcases, and an entertainment center for our addition/remodel project. Our general contractor, D and D Construction Facility Service, license #839663, referred him to us.

I met with Mr. Van den Heuvel twice to discuss exactly what I wanted and what I expected. I showed him numerous photographs of what I wanted. He took notes and made many drawings during these meetings. He made copies of the photographs and referred to them when preparing his bid. I signed the contract on 1-3-05. The total bid was $39,105. On this day, I gave Mr. Van den Heuvel 2 checks. One was a deposit in the amount of $500. The other one was for materials in the amount of $12,000. Future payments were as followed: $7,552.50 on 1-10-05. $12,000 on 1-27-05. $3,600 on 2-17-05. I will forward copies of these checks when I receive them from my bank.

I thought all was going well until the evening of 2-14-05 when Mr. Van den Heuvel requested another payment at my place of work. I am a dentist and Mr. Van den Heuvel was at my office for dental treatment. The contract lists this payment as the final payment "for the final costs to make all specified cabinetry or furniture... at inspection and approval at shop before delivery." Mr. Van den Heuvel's girlfriend and work associate had accompanied Mr. Van den Heuvel to his appointment, and while he was on the telephone, I asked her if the cabinet doors, drawer facings, or corbels had been ordered. She replied no. I was very concerned that I had already given Mr. Van den Heuvel $32,052.50 and he had not yet ordered these items, nor had I okayed the paint and stain colors. I had not yet signed off on the drawings for the laundry cabinets, desk area, window seat area, or nook server, so I was certain that Mr. Van den Heuvel had not started to build these pieces. I informed Mr. Van den Heuvel that I wanted to inspect the cabinetry at his shop, as the contract requires, before I would give him this payment.

At Mr. Van den Heuvel's shop on 2-16-05, my husband observed a few cabinet boxes and a lot of wood piled against the wall that Mr. Van den Heuvel claimed was for our cabinets.

Mr. Van den Heuvel stated that I must pay him based on the time schedule laid out in our contract and not on job performance or any phase of job completion. There are numerous statements in the contract that tie payments to job progress. Please refer to my letter to Mr. Van den Heuvel dated 2-28-05 where I discuss this as well as many other breeches of the contract. I have personally pointed out

these areas of the contract to Mr. Van den Heuvel and his response was that I needed to ignore those parts of the contract or he said "I need to remove that from my contract." I told Mr. Van den Heuvel that I would never agree to any contract where I would have to pay 100% of the cost upfront. Mr. Van den Heuvel also claimed that he was not finished because my general contractor was behind schedule. Mr. Van den Heuvel had stated to me, as well as Steve Spraig, our project manager, and it is written in the contract that the cabinetry is manufactured, finished or painted at his shop before delivery. As of today, 4-1-05, not a single piece of my cabinetry is complete. How Mr. Van den Heuvel is planning to install and finish the cabinets changes daily depending on which way best suits his need or fits his demand for more money at that moment in time.

On the morning 2-15-05, Mr. Van den Heuvel called me demanding that my husband bring the next payment with him when he came to visit the workshop that evening. I informed Mr. Van den Heuvel that my husband would not have a check to give him. I reiterated that we wanted to inspect the cabinetry first as the contract states. Mr. Van den Heuvel then asked me if I had deposited the check that he had written the evening before for his dental treatment. I informed him that I did not know if it had been deposited yet. I asked him why he was concerned about this. He informed me that he needs to collect $30,000 a month to pay his bills and that is why the payment schedule is based on a date and not on job performance. It was at this time that I became very concerned about Mr. Van den Heuvel's financial ability to complete our project. Again, his management of his finances concerned me because I had given him so much money and he had produced very little of my product and still had much more to purchase.

Mr. Van den Heuvel bullied me into the final payment with his threats of additional costs if I did not pay immediately. I foolishly sent him the payment on the morning of 2-17-05 in hopes of getting our relationship back on tract. On the evening of 2-17-05, Mr. Van den Heuvel faxed me a correspondence informing me of new charges due for additional work, late payment, and $130 for the visit my husband made to inspect our cabinets. (He also charged an additional $130 for an appointment that was mutually agreed to be rescheduled by my husband and Mr. Van den Heuvel. This appointment was rescheduled because Mr. Van den Heuvel had another engagement and my husband could not get to his workshop before he had to leave). Nowhere in our contract does it state that we would be charged to inspect the cabinets. In fact, it states that we are entitled to inspect the progress of the work. He had originally invited us to his workshop to see the cabinets being built. At no time were we informed that inspecting our cabinets constituted a billable event. I have never asked for any additional cabinetry nor changed the scope of work from our original contract. Mr. Van den Heuvel has never presented me with any change orders because there have been no changes. I had paid him in advance of his work progress but he was charging me late payment fees. He also informed me that if were going build the cabinet over the desk and upper cabinets in the laundry room, there were additional charges. These cabinets were always discussed from the beginning. The new cost for my cabinetry was now $49,250. He was demanding more than an additional $10,000.

I contacted the California State Contractor's Licensing Board to inquire how a contractor is to be paid. I was informed that Mr. Van den Heuvel was in violation of Contractor's Law 7159, the home improvement act. I informed Mr. Van den Heuvel of this violation and he informed me that he is not subject to this law since he is the manufacturer of the cabinets, and he stated he only had a license so he could install his work. In regards to the additional charges, Mr. Van den Heuvel stated that he does not give bids but rather it is an estimate. He stated that because he is an artist he couldn't be expected to be

held to a specific price. I informed him that he would not have gotten the job if he had presented me with a bid for $49,250 and that I had a budget and could not afford to work with a contractor who had an open-ended price. I called the board again and relayed this information. I was told that the Contractor's Board does have jurisdiction over him since the installation is part of the contract and thus the entire contract is subject to all the contractor's laws. Mr. Van den Heuvel continues to state that he is exempt from the contractor's rules but advertises with his contractor's license.

Mr. Van den Heuvel had received $36,652.50 from me and was demanding another $17,947.50. And I had no completed product. Out of fear that I had given him so much money already and was holding none of my product, and to avoid litigation, my husband, Steve, and I met with him at his shop on 2-24-05 to discuss the new charges and to try to reach an amicable agreement in order to complete this project. I also got to see what Mr. Van den Heuvel had accomplished regarding my job. He had framed boxes for the entertainment center and kitchen cabinetry. There were no drawers built. Only the entertainment center had some of the hardware and molding applied. He had not yet ordered any cabinet doors, drawer facings, or corbels. When I asked Mr. Van den Heuvel if he had the money to purchase the doors, facings, and corbels, his response was it was not my (Sharon Hoefling) problem but rather his if he didn't have the funds and it was none of my concern. The cabinetry was nowhere near ready for paint or stain application. This meeting proceeded very badly. Mr. Van den Heuvel would not budge on any of his demands of additional charges. I was very frustrated and felt bullied by Mr. Van den Heuvel. I felt bullied into agreeing to pay him an extra $8,285 and to receive less cabinetry just so that I could get the job completed and end this stressful business relationship. Steve Spraig had offered Mr. Van den Heuvel on 1-31-05 and did so again at this meeting, the use of a storage container at my property but Mr. Van den Heuvel refused again. He told us of other areas in and around his shop where he could store the cabinets. It seemed to me that he was okay with the cabinets remaining at his shop at this time. I typed up a new agreement (see the correspondence dated 2-24-05 and titled addendum to job invoice #1205 in response to letter dated 2-17-05) and faxed it to him. Mr. Van den Heuvel did not want to agree to this until I informed him that this was my best offer and if he refused it I had no choice but to file a complaint with the contractor's board. Mr. Van den Heuvel then verbally agreed to this but refused to sign the new cost and payment agreements that I wrote up because "they were not on his letterhead." I have asked him three times to please copy or rewrite them on his letterhead and then we could both sign it. He has never done this.

I was hopeful that this project was back on tract after he verbally agreed to the new costs. Then I learned that his word meant nothing. Unexpectedly and unannounced, Mr. Van den Heuvel showed up at my house on March 7th. He took some photographs and a few measurements. The area for the desk, window seat and bookcases, laundry room, and the nook server were being framed. I asked Mr. Van den Heuvel if he would like me to call him when the framing was complete so he could take final measurements for these areas. His response was that he did not want to come out to my house again and Steve could take the measurements. On 3-16-05, I received drawings of these areas from Mr. Van den Heuvel and correspondence instructing me to fill in the measurements. I called Steve and arranged for him to help me take these measurements. On 3-23-05, I receive a phone call from Mr. Van den Heuvel informing me that he did not want Steve to help me take the measurements. He demanded that I do it myself or pay him $190 to do it. I informed Mr. Van den Heuvel that I am not a professional carpenter and so I would not take any measurements. I informed him that it is his responsibility to take the measurements, as it is part of the scope of this job. I refused to pay him $190. Also, during the course o' this conversation, he initially admitted he had demanded that Steve take the measurements and then late

he claimed he never made that demand. The next morning my husband called Mr. Van den Heuvel to reiterate that we would not take the measurements and we would not pay him $190 to do it. He ended the conversation with my husband stating that he would not come to our home and take any measurements. Steve has informed me that earlier that same day, in which he told me and not Steve to take the measurements, Mr. Van den Heuvel had asked Steve, in a phone conversation, to take the measurements in question. Once again, Mr. Van den Heuvel changes his mind whenever it suits him or he just flat out lies about things. By this point in time, we had lost all trust in Mr. Van den Heuvel and feared that this was just an attempt to blame us for errors in construction which could then lead to additional charges. Besides, asking us to make measurements for a project for which he has been contracted to do seemed unprofessional and makes us believe that he no longer desires to do his best job possible.

Mr. Van den Heuvel has accused me of abusing him. I have never been abusive to Mr. Van den Heuvel. Just because I disagree with him does not mean that I am abusing him. On the other hand, Mr. Van den Heuvel has abused my family and myself. I have paid him ahead of his job performance. I have paid him 100% of the contracted price for the manufacture and finish of all cabinetry. The cabinetry has not been completed. I tried to resolve our differences by offering him an additional $8,285 and agreed to receive less cabinetry. He demands that I take my own measurements. I have repeatedly offered a storage container to him, which he continued to refuse. I don't know what else I could have done to resolve this without putting myself at more risk of additional charges. I truly believed that even if I had agreed to pay him $49,250 he would at some later time drum up more charges. I believe that he does not have the funds to complete my project and so he continues to demand more money.

On 3-22-05, I received another fax from Mr. Van den Heuvel. This letter states "all of your cabinetry has been inconveniently stored at my workshop since my attempted delivery and installation date 1-31-05." Mr. Van den Heuvel had been offered a storage container numerous times beginning on 1-31-05. Each and every time he refused it. He also demands I make a progress payment. He had not copied the new agreement of additional charges or payment schedule onto his letterhead as I requested and so the only signed and agreed upon contract between Mr. Van den Heuvel and myself is the original job invoice #1205. I had already paid for everything we originally agreed to. No drawings had been approved for the remaining work.

On 3-23-05, Mr. Van den Heuvel demanded I put a storage container on my property to store my cabinets. Per his request, I informed him that one had been ordered and I would let him know when it arrived. On the morning of 3-28-05, Mr. Van den Heuvel again arrived at my house unexpectantly and uninvited. He took a few measurements. The storage container arrived at my house this same day around noon. I received a fax at work from Mr. Van den Heuvel in the late afternoon. It is titled final notice. He had added additional cost for doors and drawer fronts again in the amount of $1,800. I had already paid for all material costs on January 3rd. Again, he is showing us that he has not yet even ordered all the material for which he was given money specified for that part of the project. He is charging me a "rescheduled hardship installation" fee of $1,200. He states that the "scheduled" installation date of 3-18-05 had passed. My correspondence to Mr. Van den Heuvel on 2-28-05 states that 3-18-05 is an "estimated" date for installation. No installation with Mr. Van den Heuvel was ever scheduled. On 3-15-05, Mr. Van den Heuvel showed up unannounced and uninvited at our house and took several photographs. We did not know he was even in our home until he sent copies of these dated pictures to our home. Steve informed Mr. Van den Heuvel on 3-16-05 that the area was not ready for

installation. He is charging me $2,700 for late payment even though I have paid everything on the signed contract. He is charging me $2,700 for storage of the cabinetry that he has not completed. Mr. Van den Heuvel has been offered on many occasions a storage container since 1-31-05. My husband and my contractor have each offered to move the cabinets for him. Mr. Van den Heuvel has repeatedly refused these free of charge offers of both labor and the storage container.

The "final notice" correspondence has charges and fees that total $55,045. Mr. Van den Heuvel demanded that I pay him the entire balance of $18,925 by 3-29-05 or he would stop work. I phoned Mr. Van den Heuvel in the morning on 3-29-05 and informed him that the storage container is on my property. I asked him to deliver my cabinets. I informed him that I received his final notice and that we would need to settle this by legal means. Mr. Van den Heuvel immediately faxed me a stop work notice due to nonpayment and he refuses to deliver any of my cabinetry until I pay him $18,925. Again, he is demanding that we pay 100% of these non-contracted costs and frivolous fees and yet nothing additional has been done. It appears to us that he is simply adding on charges with no end in site. We do not know how many more charges are coming. However, Mr. Van den Heuvel is continuing to charge me storage fees, late payment fees and hardship fees everyday while I am trying to get help resolving this. The storage container that he requested is still sitting on my property and is being paid for by my contractor.

Mr. Van den Heuvel seems quite comfortable to demand money far beyond our agreed to and signed contract while at the same time refusing to make all of the cabinets he originally agreed to. He has demanded us to pay additional money whenever he states and for amounts which don't appear to have any justifications. He has all the money assigned to him in our contract to complete the cabinets minus the installation and finishing. However, he demands more money and still has not completed the cabinets nor has he even ordered all of the materials. He believes he does not have to abide by any contractors laws or rules, yet he uses his contractors license as part of his advertising.

In short, we do not trust and are not comfortable with Mr. Van den Heuvel and do not wish for him to step onto our property. We do not want him to complete the project because of the numerous reasons stated in this letter. Please help us to remedy this situation. We would like to know our legal options.

Sincerely,

Sharon Hoefling